## THE SOUTH PORTLAND.

(District Court, D. Washington, N. D. November 18, 1901.)

1. SEAMEN—REFUSAL TO PERFORM CONTRACT FOR SERVICE—COERCION BY IMPRISONMENT.

Since the passage of Act Dec. 21, 1898 (2 Supp. Rev. St. 897), there is no authority for the imprisonment of a seaman for refusing to further perform his contract for service on a ship when at any port; and such imprisonment at the instance of the master, whether through judicial process or otherwise, is a violation of his personal rights which renders the vessel liable in damages.

2. SAME—DAMAGES.

Libelants shipped as seamen for a voyage to Alaskan ports and return. On reaching a port in Alaska they refused to further perform their contract, and announced their intention to leave the vessel on the ground that she was unseaworthy and unsafe. The master procured a warrant from the commissioner, under which libelants were arrested and imprisoned until the vessel left, when they were returned on board. They served during the remainder of the voyage, and were then discharged and paid in full. They were in fact not justified in their attempt to quit the vessel, and the master acted in good faith and under legal advice; neither he nor the attorney having knowledge that the law permitting such procedure had been repealed. *Held* that, under the circumstances, libelants would be awarded $10 each as damages for their illegal imprisonment.

In Admiralty. Libel by seamen to recover damages for illegal imprisonment by the master.

Root, Palmer & Brown, for libelants.
Fred Bausman, for claimant.

HANFORD, District Judge. The libelants in this case signed shipping articles for a voyage on the steamship South Portland to Cape Nome, via Skagway and other places in southeastern Alaska, and return to Seattle. In making the run to the north some hardships and perils were encountered, but nothing of an unusual character. The steamer's boiler was old and required repairing, but there was nothing in the condition of the ship or her machinery to cause apprehension, in addition to what was known by the libelants before signing the shipping articles, and the vessel was in fact seaworthy. The libelants, however, claiming that they were justified in wishing to leave the vessel at Skagway, because they supposed the vessel to be unseaworthy and not fit to proceed farther on her voyage, have brought this suit to recover damages for being coerced into performing their contract. On the day of the vessel's arrival at Skagway they failed to turn to at the usual hour after the noonday meal, and, upon inquiry being made, they informed the first mate that they were going to leave the vessel. The captain persuaded them to continue at work until 5 o'clock, and in the meantime, upon the advice of a lawyer, he complained to the United States commissioner, who issued a warrant under which a deputy marshal went on board the vessel and arrested the libelants, and they were imprisoned until the vessel was ready to proceed on her voyage, when they were forced to return to the ship; a squad of United States soldiers, with fixed

bayonets, being called to the assistance of the deputy marshal for the purpose. I find from the evidence that the libelants had no legal or reasonable cause for wishing to quit the service of the vessel, and that Capt. Hall acted without malice, and adopted only such measures as he believed he was legally justified in resorting to, to compel them to perform the contract. After returning to the vessel, they performed their duties faithfully until the return to Seattle, when they were discharged and paid their wages in full, including payment for overtime, according to their contract.

All laws sanctioning and regulating imprisonment and the use of force to compel involuntary servitude on the part of seamen in the merchant vessels of this country were repealed and abrogated by the act of December 21, 1898 (2 Supp. Rev. St. U. S. 897), except that disobedience at sea may be punished by confinement in irons, with a bread and water diet. In this statute the legislative intent to extend to sailors the benefit of the thirteenth amendment to the constitution of the United States is plainly indicated, and at the present time it is just as unlawful to imprison a sailor who at any port refuses to perform a contract which he has entered into for service on a ship, as to imprison a journeyman mechanic or farm laborer for a similar refusal. No matter how much inconvenience and loss shipowners and merchants and travelers may suffer by the detention of an American ship, caused by refusal of the crew, when the vessel is in port, to proceed on a voyage, it is unlawful to use judicial process or force to coerce the crew. Congress delayed for many years to make the laws relating to merchant seamen conform to the thirteenth amendment to the constitution, but at last, by complete and radical legislation, it has seen fit to subject the interests of shippers and travelers to the hazard to which I have referred, in preference to exposing sailors to the chance of suffering oppression and abuses by being compelled to render unwilling service. The justice or wisdom of the change is not a matter for judicial investigation. The duty of the court is plain,—to protect sailors, as well as others, in their legal rights; and, as the libelants in this case were subjected to unlawful imprisonment at the instance of the captain, they are entitled to recompense for that wrong. The injury which they suffered, however, was not serious, and as the captain acted without malice, under the advice of a lawyer who probably did not have access to the statutes recently enacted by congress, and was not informed that the laws which he supposed authorized the proceedings had been repealed, there is no reason for awarding very heavy damages. Considering all the circumstances, and the expenses incident to the litigation, it is the decision of the court that each of the libelants recover as damages the sum of $10 and costs.