### JOHNSTON et al. v. MOWATT.

#### (District Court, E. D. Pennsylvania. May 15, 1902.)

##### SEAMEN—IMPRISONMENT—LIABILITY OF MASTER FOR DAMAGES.

Libelants were seamen on board an American bark of which respondent was master, and while in Havana, during their term of service, refused to work longer. Respondent reported the matter to the captain of the port, who was a military officer of the United States, and requested permission to discharge the men. This was refused, and the captain of the port had the men taken on shore and imprisoned. On their return to the vessel one of them was placed in irons by the mate. Respondent was absent, and it did not appear that the act was done by his orders. Shortly after his return such libelant was released. Held that, conceding the imprisonment in both instances to have been unlawful, there was no ground for holding respondent personally liable therefor.

In Admiralty. Suit by seamen to recover damages for illegal imprisonment.

Jos. Hill Brinton, for libelants.

Howard M. Long and Henry R. Edmunds, for respondent.

J. B. McPHERSON, District Judge. On July 30, 1901, the libelants shipped at the port of Philadelphia as seamen on the American bark Matanzas, of which the respondent was master, for a voyage to Havana and elsewhere, returning to a port of discharge in the United States within six calendar months. The ship arrived at Havana on September 15th, and after she had come to anchor the respondent went ashore. During his absence the libelants, with others of the crew, refused to work, Johnston declaring that he wanted to be in a safer ship, while Gronland said that he was sick and not fit to work. Upon the respondent's return to the ship the refusal of the men was reported to him, and the next morning he called them aft, and demanded to know their reasons for declining to work. The reasons already stated were repeated to the respondent, and he thereupon reported the matter to the captain of the port. Havana was then under military law, and an officer in the United States army was captain of the port. The respondent asked permission to discharge the men, but both the captain and the collector of the port refused to allow him to do so, on the ground that they did not want any more vagrants in the city. The captain of the port said, further, that he would himself take charge of the matter, and shortly afterwards he sent some of the harbor police to the ship, who, upon the continued refusal of the men to work, took six of them ashore and put them into prison. At the same time he directed the respondent to notify him when the ship was about to sail, in order that he might return the men on board. While in prison, Gronland was examined by a physician, and pronounced to be in as good physical condition as when he signed the

articles. After two or three days Gronland consented to return to work, but Johnston continued to refuse until September 20th, when he was brought back to the ship and put in irons by the mate in the respondent's absence. When the respondent returned to the ship the libelants demanded to see the American consul, and the respondent sent at once for that official, whose representative came to the ship and had an interview with the libelants. They declared the ship to be unseaworthy, and demanded that a survey be had. This was granted without delay, and the surveyors pronounced the ship to be in seaworthy condition. Thereupon the libelants returned to work, and continued at duty until their arrival at the port of Philadelphia, where they were discharged. This suit is brought for the imprisonment at Havana, for which the libelants declare the respondent to be liable.

Section 19 of the act of December 21, 1898 (2 Supp. Rev. St. 903), was under consideration in The South Portland (D. C.) 111 Fed. 767, and it was there decided by Judge Hanford that since the passage of this statute there is no authority for the imprisonment of a seaman for refusing further to perform his contract, so long as the vessel is lying in port, and that such imprisonment at the instance of the master, whether through judicial process or otherwise, is a violation of personal rights which renders the vessel liable for damages. Assuming this to be correct, the question still remains whether the present respondent is liable, and upon this point the testimony satisfies me that neither the imprisonment on shore nor the punishment on board the ship was inflicted by the direction or at the request of the master. The captain of the port took the matter into his own hands by virtue of his military authority, and, while undoubtedly the respondent did not prevent the imprisonment, he had no control over the harbor police, and could not have interfered with their action. He wished to discharge the men, but, as he was not permitted to do so, nothing was left for him except to allow the captain of the port to remove the men from the ship. It nowhere appears that the action of the mate in putting Johnston in irons for a few hours upon his return to the vessel was ordered by the captain, or that he was present when it was done. I see no ground, therefore, upon which the respondent can be held liable, and therefore direct the libel to be dismissed, but without costs.