## ESCANDON v. PAN AMERICAN FOREIGN CORPORATION.
### No. 1549.

District Court, S. D. Texas, Galveston Division.

Oct. 15, 1935.

Brantly Harris and George W. Coltzer, both of Galveston, Tex., for libelant.

Royston & Rayzor and Clarence S. Eastham, all of Galveston, Tex., for respondent.

KENNERLY, District Judge.

This is a libel in personam with writ of foreign attachment by Ramon Escandon (libelant), a naturalized American, age 45 years, against the Pan American Foreign Corporation, owner of the steamship Dean Emery, for damages because of the alleged assaulting and handcuffing of libelant, a seaman on the Dean Emery, by the chief officer thereof, on or about March 21, 1935. Respondent has answered, in effect denying the allegations of the libel.

The facts are as follows:

(a) Libelant, on or about March 21, 1935, was a seaman and pumpman on the steamship Dean Emery, owned by respondent. The Dean Emery was lying in the harbor of Galveston, being prepared for its annual inspection. On that date, trouble arose between libelant and the chief officer (mate) of the Dean Emery, and the chief officer, assisted by another man, between 11 and 11:30 a. m., handcuffed libelant's hands behind him, took him to his quarters, and locked him in. Later, about 1:30 p. m., libelant escaped, went ashore, visited several persons with a view of having the handcuffs removed, and finally visited the office of the United States Marshal for this district, where the Deputy United States Marshal in attendance caused the chief officer to come to his office about 3:30 or 4 p. m., and remove the handcuffs. There is no dependable evidence that the chief officer cursed or abused libelant, or that he assaulted him, except in so far as laying hands upon him for the purpose of handcuffing him, and taking him to his quarters, was an assault.

(b) The evidence with respect to the happenings leading up to the handcuffing of libelant is conflicting. I think it supports the finding (and I find) that libelant, for a day or so previous to March 21, 1935, had been drinking intoxicating liquor, and was unable to, and did not, work, and that while early in the morning of that day he was apparently sober and undertook to work, he continued drinking during all the morning. If libelant was not intoxicated at the time he was handcuffed (and I am inclined to think he was), he was so far under the influence of liquor as to be incapable of performing his duties as pumper, and was obstreperous, quarrelsome, and refused to obey the orders of the chief officer. He undertook to, and insisted upon, interfering with the proper arrangements which the chief officer had made with respect to the pumps, and if he had not been in some manner restrained, he would have caused, or would likely have caused, damage to the ship, its contents, or persons on board. The purpose of the chief officer in having him handcuffed and confined to his quarters was not to compel him to work, or to punish him for any infraction of the rules of the ship or the law, but as a precautionary measure to prevent him from interfering with the pumps, injuring the vessel or contents, or persons on board. No more force was used than libelant made necessary. It is reasonable to believe that if libelant had not escaped and gone ashore, he would have been released so soon as it was safe to do so. This would have probably been much sooner than he was released.

(c) On the day, and at the time of the handcuffing, the master was not on board the ship, but was in the city of Galveston, having some dental work done. Ordinarily, libelant was under the immediate direction of the chief engineer, but on that particular day (March 21, 1935) he had been directed by the chief engineer to work under the direction of the chief officer. In the absence of the master, the chief officer was in charge of the ship, with all the responsibilities, duties, and powers of the master.

(d) There was some minor physical injury to the hands and arms of libelant, caused not so much by the handcuffing and the handcuffs themselves, as by his effort to extricate himself therefrom.

Libelant cites and stands upon The South Portland (D.C.) 111 F. 767; Johnston v. Mowatt (D.C.) 115 F. 844; Jamison v. Encarnacion, 281 U.S. 635, 50 S.Ct. 440, 74 L.Ed. 1082; Alpha Steamship Corp. v. Cain, 281 U.S. 642, 50 S.Ct. 443, 74 L.Ed. 1086. These were cases in which the injured seaman was punished to compel him to work. Here libelant was not handcuffed and confined to his quarters because of any violation by him of the law, or to compel him to work or perform his duties, but to prevent his injuring the ship and its contents and persons on board. The master being absent, the chief officer was in charge, with all the privileges, duties, and obligations of the master (Corpus Juris, vol. 58, page 265, § 7), and his action in handcuffing libelant and confining him to his quarters was, under the facts, not unlawful. The David Evans (C.C.A.) 187 F. 775, 777.

From what has been said, it follows that judgment should go for respondent.